# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cindi Martzen, : 
           : 
           Petitioner : 
           : 
        v. : No. 436 C.D. 2015
           : Submitted: February 12, 2016
Workers' Compensation Appeal Board : 
(Jo-Ann Stores), : 
           : 
           Respondent : 

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                **FILED: August 2, 2016**

Cindi Martzen (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision and order of a Workers' Compensation Judge (WCJ) denying two claim petitions filed by Claimant against Jo-Ann Stores (Employer) relating to an alleged workplace injury that occurred on July 6, 2012. For the reasons that follow, we affirm the order of the Board.

On August 23, 2012, Claimant filed a claim petition in which she asserted that she sustained a workplace injury to her neck, back and legs on July 6, 2012 when she was moving a rack containing baskets of clothing that tipped over and caused Claimant to fall backwards to the ground. (Reproduced Record (R.R.)

at 2-4.) Claimant filed a second claim petition on May 30, 2013, in which she alleges that she suffered a disfigurement resulting from surgery related to the July 6, 2012 injury. (R.R. at 12-14.) Employer filed answers to both claim petitions, denying that Claimant sustained work-related injuries. (R.R. at 8-9, 19-20.) Claimant had previously sustained a work injury on January 12, 2011 while working for Employer, described as a "lumbar spine, strain/sprain possible disc injury"; Employer accepted this injury through a medical-only notice of compensation payable. (WCJ Decision and Order, Finding of Fact (F.F.) ¶2.) At the time the WCJ issued his decision in this matter, a suspension petition regarding the January 12, 2011 injury was pending. (WCJ Decision at 3 n.1.) The WCJ stated in his decision that the proceedings related to the two injuries were not consolidated because Employer was represented by different insurance carriers at the time of the two incidents. (*Id.*)

In support of the claim petition, Claimant testified that she began working for Employer in 2009 as a store supervisor. (Claimant Dep. at 7-8, R.R. at 133-134.) Claimant testified that on January 12, 2011, she fell off a ladder while at work; following her injury, she began treatment with Dr. O'Dell, the workers' compensation panel physician, who concentrated his treatment on Claimant's back and hip despite her complaints of pain in her neck, shoulder and arm. (*Id.* at 7-10, R.R. at 133-136.) Claimant returned to work after four months but was never completely pain free and her work activities were limited to prevent bending over for long periods of time. (*Id.* at 8, 10-12, R.R. at 134, 136-138.) In late June 2012, Claimant testified that she felt pain in her back after planting flowers and, on July 2, 2012, she visited Dr. O'Dell who prescribed Claimant pain medication and also provided her with a referral to Dr. Joseph R. Verna; the pain medication relieved

2

Claimant's symptoms and she had no intention of scheduling a follow up visit as of July 5, 2012. (*Id.* at 13-16, R.R. at 139-142.)

Claimant testified that, on July 6, 2012, she was attempting to move a metal rack containing baskets of t-shirts for sale but was having difficulty because the rack's wheels were stuck. (*Id.* at 16-17, R.R. at 142-143.) Claimant called over a store employee, Michelle Finisdore, to assist her and when Finisdore pulled the rack, the wheels became unstuck and the baskets flew out of the rack, striking Claimant in her legs and causing her to fall backwards. (*Id.* at 16-17, 27-28, R.R. at 142-143, 153-154.) Claimant felt increasing pain over the course of the next few days and scheduled an appointment with Dr. Verna on July 9, 2012; Claimant testified that she was not sure what date she reported her incident to her supervisor, Jonnell Brown, but believed that it was the same day she first visited Dr. Verna. (*Id.* at 17-19, 30, R.R. at 143-145, 156.) Dr. Verna referred Claimant to two specialists to examine her neck, Dr. Joseph Richards for injections and Dr. Andrew Freese for evaluation for surgery; Dr. Freese performed surgery on Claimant's neck on October 16, 2012. (*Id.* at 19-20, R.R. at 145-146.) Claimant testified that though her pain and mobility of her neck has improved following surgery, she is not currently capable of returning to work and could not perform many of the duties associated with her job including lifting, standing and bending. (*Id.* at 20-22, R.R. at 146-148.)

Claimant also presented the testimony of Joseph R. Verna, D.C., who is a licensed chiropractor with a diplomate from the American Chiropractic Neurology Board. (Verna Dep. at 5-10, R.R. at 26-31.) Dr. Verna testified that he first examined Claimant on July 9, 2012 after she was referred to him by Dr. O'Dell, the physician who had treated Claimant for her prior back injury; at the

3

time of the first examination, Claimant reported pain in her neck and lower back and attributed her symptoms to an incident in which she was pulling a shelving system that fell down upon her. (*Id.* at 11-12, R.R. at 32-33.) Dr. Verna deferred treatment on Claimant's neck until an MRI could be performed of her cervical spine and instead focused his treatment on Claimant's lower back, which he diagnosed as lumbosacral radiculitis secondary to lumbar disc displacement and somatic dysfunction of the lumbar spine. (*Id.* at 12-14, R.R. at 33-35.) Dr. Verna testified that he had been continuing treatment of lumbar traction, interferential stimulation, ultrasound, chiropractic manipulation and bracing; Claimant had also received one injection for her lumbar spine and Dr. Verna anticipated that she would continue receiving more injections. (*Id.* at 19-22, R.R. at 40-43.)

After reviewing the MRI report of August 15, 2012, revealing severe compression of the nerve root at the C5-6 level due to an osteophyte and disc protrusion, Dr. Verna felt that the chiropractic treatment was inappropriate for Claimant and he referred her to Dr. Richards for injections and Dr. Freese for neurosurgical consultation. (*Id.* at 20-21, R.R. at 41-42.) Dr. Verna testified that the injections did not offer Claimant any benefits and Dr. Freese then performed anterior cervical discectomy and fusion surgery at the C5-6 level. (*Id.* at 21, R.R. at 42.) At the time of his deposition, Dr. Verna's present diagnosis of her neck issues was post-surgery secondary to cervical radiculopathy due to disc protrusion and osteophyte with cervical sprain/strain and segmental dysfunction. (*Id.* at 23, R.R. at 44.) Dr. Verna was of the opinion that both Claimant's current back and neck symptoms were a result of the July 2012 work injury and the January 2011 work injury did not have any impact on her current condition because she had

4

achieved maximum medical improvement from that injury. (*Id.* at 23-24, R.R. at 44-45.)

On cross examination, Dr. Verna testified that Claimant reported during her first visit that her symptoms in her neck were present on July 2, 2012 and her symptoms in her lower back were present beginning June 28, 2012. (*Id.* at 13, 26-27, R.R. at 34, 47-48.) Dr. Verna stated that he was not aware Claimant alleged an injury occurring on July 6, 2012 and that this injury date would not make sense to him because of the dates of onset of symptoms Claimant provided and the fact that Dr. O'Dell referred her to Dr. Verna on July 2, 2012. (*Id.* at 26, 28, R.R. at 47, 49.) Dr. Verna acknowledged that his medical notes did not state that Claimant sustained a work-related injury, but attributed this to a deficiency in his recordkeeping software. (*Id.* at 27, R.R. at 48.) Dr. Verna further acknowledged that Claimant's 2011 MRI showed lumbar disc abnormalities for the same levels he was providing treatment and that the cervical disc osteophyte complex shown on the 2012 MRI was a degenerative condition that had been developing for years prior to the July 6, 2012 incident. (*Id.* at 32-34, 44, R.R. at 53-55, 65.)

Following his deposition, Dr. Verna submitted a supplemental expert report, in which he reiterated that he believed that Claimant's neck condition and medical treatments were related to the July 6, 2012 incident. (R.R. at 346.) However, Dr. Verna also emphasized that if the WCJ were to reject Claimant's testimony that she was knocked over by the rack, then he would conclude that her current condition was related to the January 12, 2011 workplace incident. (*Id.*)

Employer presented the deposition testimony of Neil Kahanovitz, M.D., who is board certified in orthopedic surgery and whose practice focuses on

5

surgical and non-surgical treatment of spinal disorders. (Kahanovitz Dep. at 6, R.R. at 254.) Dr. Kahanovitz performed an independent medical examination (IME) of Claimant on February 22, 2013, in which he elicited a medical history from Claimant, reviewed her medical records and conducted a physical examination. (*Id.* at 10-18, R.R. at 258-65.) Dr. Kahanovitz testified that it was his opinion that, assuming the veracity of Claimant's account of the July 6, 2012 workplace incident that she was knocked to the ground by the falling rack, her neck surgery and additional treatment were related both to the July 6, 2012 incident and the January 12, 2011 workplace incident. (*Id.* at 21-22, 32-33, 35-36, 42, R.R. at 269-70, 280-81, 283-84, 290.) However, Dr. Kahanovitz testified that, assuming Claimant did not fall to the floor when the clothing rack tipped over and it only struck her lower legs, there would have been no trauma to her neck and her neck complaints would have been only related to the 2011 workplace incident. (*Id.* at 29-30, 33-36, R.R. at 277-78, 281-84.)

Employer also presented the testimony of two fact witnesses, Jonnell Brown, a district team leader for Employer and Claimant's direct supervisor, and Michelle Finisdore, a guest services employee who was working on July 6, 2012. Brown testified that Employer policy requires that in the event of an injury, employees are required to notify their direct supervisor of the injury and complete an accident report for Employer's insurer. (Brown Dep. at 6, R.R. at 205.) Brown stated that Claimant called her approximately five days after her July 6, 2012 injury to report that she was hurt when a rack fell on her and would be out of work for a few days; Brown thought it unusual that Claimant did not report the incident immediately. (*Id.* at 7-8, R.R. at 206-07.)

6

Finisdore testified that on July 6, 2012, Claimant asked her to help move the rack of t-shirts from one part of the store to another; Finisdore stated that Claimant grabbed the tower from the top and started to pull it towards her and the rack fell over. (Finisdore Dep. at 8-10, R.R. at 228-30.) Finisdore was directly to the side of the rack when it fell and she observed no part of the rack hit Claimant. (*Id.* at 10-11, R.R. at 230-31.) Finisdore testified that Claimant did not fall to the floor when the rack fell; although Finisdore stated that she turned away for 30 seconds as the rack fell, she knew the rack did not hit Claimant because Claimant was standing upright when Finisdore turned around. (*Id.* at 11-13, 21, R.R. at 231-33, 241.) Finisdore stated that when she turned around, Claimant was rubbing her shin; Finisdore asked Claimant if she was okay and Claimant reported that she already was experiencing pain in her leg that morning. (*Id.* at 13-14, R.R. at 233-34.) Finisdore testified that Claimant continued to work for approximately three and one-half hours more before leaving for the day. (*Id.* at 14-15, R.R. at 234-35.)

The WCJ denied the claim petitions, finding that Claimant's testimony regarding the July 6, 2012 incident lacked credibility, in light of the fact that Claimant sought treatment for her back and neck four days prior to the incident, that there was no evidence that the rack struck her upper body, and that Dr. Verna's records reflect an onset of symptoms prior to July 6, 2012 and do not indicate that the symptoms are work related. (WCJ Decision and Order, F.F. ¶9.) The WCJ found credible the testimony of Employer's fact witnesses that Claimant did not fall to the ground when the rack fell or report the injury until four days after the incident. (*Id.*) The WCJ also found Employer's medical expert, Dr. Kahanovitz, more credible than Claimant's medical expert, Dr. Verna, because Dr. Kahanovitz is a board-certified orthopedic surgeon more qualified to render an

7

opinion on causation and diagnosis and because Dr. Verna based his opinion on the history provided by Claimant which had been rejected. (*Id.*, F.F. ¶10) The WCJ further noted that Dr. Verna agreed with the opinion of Dr. Kahanovitz that if it was assumed that Claimant did not fall to the floor, then he would agree that the injuries were not related to the July 6, 2012 incident. (*Id.*) The WCJ concluded that Claimant's current symptoms and need for medical treatment, including her cervical spine surgery, were related to the previous January 2011 work injury that had been recognized by Employer. (*Id.*, F.F. ¶11.)

Claimant appealed the order of the WCJ, and the Board affirmed. In addition, Employer's insurer at the time of the 2011 work injury appealed the WCJ's order, arguing that the WCJ erred in attributing Claimant's need for treatment to the January 2011 work injury when the insurer had not been made a party to the proceeding. The Board stated that it agreed with Employer's 2011 insurer that the WCJ's finding that Claimant's treatment was related to the earlier injury was in error but held the error harmless dicta because the WCJ only denied the claim petitions on the grounds that Claimant did not meet her burden of proving a July 6, 2012 work injury and did not establish liability based on the January 2011 injury. (Board Op. at 5.) Claimant thereafter filed a petition for review of the Board's order with this Court. Employer's 2011 insurer did not appeal.[1]

Claimant argues on appeal that a full review of the record shows that the WCJ's findings of fact and credibility determinations contain a "'scheme' of

---

[1] Our review is limited to determining whether an error of law was committed, whether the WCJ's necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated. *Walter v. Workers' Compensation Appeal Board (Evangelical Community Hospital)*, 128 A.3d 367, 371 n.5 (Pa. Cmwlth. 2015).

8

errors" that requires this Court's reversal of the Board's affirmance of the WCJ's order. (Claimant Br. at 13 (quoting *Giant Eagle, Inc. v. Workmen's Compensation Appeal Board (Bensy)*, 651 A.2d 212, 218 (Pa. Cmwlth. 1994).) Claimant asserts that the reasons cited by the WCJ in rejecting Claimant's testimony that she fell to the ground on July 6, 2012 and suffered an injury to her back and neck as a result were in error, and, in fact, a review of the full record demonstrates the veracity of Claimant's account of that incident.

Under the Workers' Compensation Act (Act),[2] the claimant bears the burden of establishing all the necessary elements to support an award. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592, 595 (Pa. 1993); *Potere v. Workers' Compensation Appeal Board (Kemcorp)*, 21 A.3d 684, 689 (Pa. Cmwlth. 2011). The critical inquiry in our review of workers' compensation appeals is whether there is evidence to support the findings actually made; accordingly, it is irrelevant whether there is evidence to support findings other than those made by the WCJ. *A & J Builders, Inc. v. Workers' Compensation Appeal Board (Verdi)*, 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013); *Minicozzi v. Workers' Compensation Appeal Board (Industrial Metal Plating Inc.),* 873 A.2d 25, 29 (Pa. Cmwlth. 2005). Our review requires us to examine the entire record to determine whether there is evidence that a reasonable mind might find sufficient to support the WCJ's findings, and, if there is such evidence, the order being appealed must be upheld despite conflicting evidence. *A & J Builders*, 78 A.3d at 1238-39, *Minicozzi,* 873 A.2d at 29.

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2708.

The WCJ is the ultimate finder of fact and arbiter of credibility and evidentiary weight in workers' compensation cases. *Walter v. Workers' Compensation Appeal Board (Evangelical Community Hospital)*, 128 A.3d 367, 371 n.3 (Pa. Cmwlth. 2015). A WCJ is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *Id.*; *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995). Furthermore, the WCJ may choose to rely on the opinion of one medical expert over that of another and may rely on the testimony of a single expert even where there is conflicting expert evidence. *Morey v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 684 A.2d 673, 678 (Pa. Cmwlth. 1996). Determinations of witness credibility and evidentiary weight are not subject to appellate review except where made arbitrarily and capriciously. *Casne v. Workers' Compensation Appeal Board (STAT Couriers, Inc.),* 962 A.2d 14, 19 (Pa. Cmwlth. 2008).

We conclude that, rather than being replete with errors as Claimant asserts, the WCJ's findings of fact were supported by substantial evidence and his conclusion of law that Claimant had not met her burden on the claim petition logically followed from these findings. The WCJ provided four reasons for rejecting Claimant's account that she injured her back and neck during the July 6, 2012 work incident: first, that Claimant had received treatment from Dr. O'Dell for her back and neck four days prior to July 6, 2012; second, that it was uncontroverted that the rack did not strike her neck and back; third, that Claimant's co-worker, Michelle Finisdore, testified that Claimant did not fall to the ground when the rack struck her; and fourth, that Dr. Verna's records do not state that the injury was work-related and indicate that Dr. Verna was provided with an onset

10

date for symptoms prior to the July 6, 2012 incident. (WCJ Decision and Order, F.F. ¶9.) Each of these reasons for rejecting Claimant's account of the July 6, 2012 incident is well-supported by the record.[3]

Claimant focuses her challenge of the WCJ's finding that she was not knocked to the ground by the falling rack on the testimony of Finisdore, who Claimant argues was not competent or credible because she admitted to turning away when the rack fell. Though Finisdore testified that she turned her back to Claimant to dodge the falling baskets and did not turn back around for "30 seconds at the most," Finisdore testified unequivocally that Claimant did not fall to the ground, explaining that she based this determination on the fact that Claimant was standing straight upright when Finisdore "flashed back around" and Finisdore did not believe that it was possible that Claimant could have picked herself up with no assistance and be standing upright in the time her gaze was averted. (Finisdore Dep. at 12-13, 21, R.R. at 232-33, 241.) We believe that this testimony was competent to show that Claimant was not knocked over by the falling rack. Moreover, even discounting Finisdore's testimony, the WCJ identified other bases in the record that independently support the finding that Claimant was not knocked to the ground when the garment rack fell on July 6, 2012.

Claimant further argues that the WCJ capriciously disregarded the testimony of Employer's expert, Dr. Kahanovitz, that Claimant may have aggravated her lower back injury even if she did not fall to the ground and that this would support granting the claim petitions, at least to the extent that she injured her

---

[3] (*See* Verna Dep. at 11, 13, 26-29, 42, R.R. at 32, 34, 47-49, 63; Claimant Dep. at 27-29, R.R. at 153-55; Finisdore Dep. at 11-13, 21, R.R. at 231-33, 241; Kahanovitz Dep. at 24-25, R.R. at 272-73.)

lower back as a result of the July 6, 2012 incident. Our review for the "capricious disregard" of material, competent evidence is an appropriate component of appellate review in any case in which the question is properly raised before the court. *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe),* 812 A.2d 478, 487 (Pa. 2002). A capricious disregard of evidence occurs "when there is a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result." *Station Square Gaming L.P. v. Pennsylvania Gaming Control Board*, 927 A.2d 232, 237 (Pa. 2007); *see also Pryor v. Workers' Compensation Appeal Board (Colin Service Systems)*, 923 A.2d 1197, 1205 (Pa. Cmwlth. 2006).

Dr. Kahanovitz testified that even if Claimant did not fall to the ground during the July 6, 2012 incident, "there may have been some aggravation of the lower extremity and low back complaints." (Kahanovitz Dep. at 30, R.R. at 278.) However, Dr. Kahanovitz's statement that Claimant may have aggravated her lower back injury was based upon an assumption that Claimant suffered some trauma to her lower back from the rack striking her,[4] which is contrary to the WCJ's findings regarding the July 6, 2012 incident. Moreover, testimony that an incident "may have" injured Claimant is insufficient to satisfy the requirement that a claimant prove her work injury through unequivocal medical testimony. *Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education)*, 498 A.2d 800, 802 (Pa. 1985); *Reinforced Molding Corp. v. Workers' Compensation*

---

[4] (Kahanovitz Dep. at 29-30, R.R. at 277-78 ("...I would think that in the absence of any traumatic event involving the neck, but only to the lower back and shin, particularly based on the history just four days previously of back and lower extremity complaints, that there may have been some aggravation of the lower extremity and low back complaints.").)

*Appeal Board (Haney)*, 717 A.2d 1096, 1098 (Pa. Cmwlth. 1998). Viewed as a whole, there is insufficient support in Dr. Kahanovitz's testimony for a finding that Claimant sustained a work-related disability or had any need for treatment resulting from a July 6, 2012 back injury.[5] Furthermore, Claimant's own expert, Dr. Verna, concluded that if the WCJ were to reject Claimant's testimony regarding being knocked over by the falling rack, he would attribute Claimant's current condition and need for treatment entirely to the January 2011 work injury. (Supplemental Expert Report at 1, R.R. at 346.)

Finally, Claimant argues that this Court should remand this matter to the Board in accordance with Section 706 of the Judicial Code,[6] so that the Board may remand to a WCJ to consolidate this matter with litigation pending before the Board regarding the suspension petition filed by Employer related to the January 2011 injury. Claimant asserts that Employer, who had a different insurer at the time of the January 2011 injury, presented contradictory medical expert testimony in the suspension petition proceeding and that Claimant's supervisor, Jonnell Brown, provided conflicting testimony regarding Claimant's notice after the July 6, 2012 incident. Because the depositions in the suspension petition matter were

---

[5] Even assuming the veracity of Claimant's account of the July 6, 2012 incident that she was knocked over by the falling rack, it is uncertain whether Dr. Kahanovitz's testimony would support the grant of a claim petition for an injury to Claimant's back. A claimant bears the burden of proving continuing disability throughout the pendency of her claim petition. *American Contracting Enterprises, Inc. v. Workers' Compensation Appeal Board (Hurley)*, 789 A.2d 391, 397 (Pa. Cmwlth. 2001). Dr. Kahanovitz testified that, based on Claimant's account of the incident, Claimant had suffered a lumbar strain but that she had completely recovered from the strain at the time of the IME. (Kahanovitz Dep. at 19-20, 22, R.R. at 267-68, 270.)

[6] "An appellate court may affirm, modify, vacate, set aside or reverse any order brought before it for review, and may remand the matter and direct the entry of such appropriate order, or require such further proceedings to be had as may be just under the circumstances." 42 Pa. C.S. § 706.

13

taken after the WCJ issued a decision in this case and thus the WCJ could not consider the alleged contradictions, Claimant argues that this matter should be remanded and both proceedings consolidated so that the WCJ may consider the evidence presented in the two cases together and issue consistent rulings.

This Court previously addressed a similar argument from Claimant, when Claimant filed a reproduced record containing the deposition transcripts from the proceedings on the suspension petition. Employer then filed an application to strike the portions of the reproduced record not contained in the certified record, along with Claimant's brief; Claimant argued that this Court has authority to examine this "after discovered" evidence in assessing the credibility and competence of the testimony in this matter. In a September 8, 2015 opinion and order, this Court granted the application to strike, observing that our review is confined to the certified record and that we may not take judicial notice of evidence from related proceedings that follow the date of the order, even where known to the tribunal below. *Martzen v. Workers' Compensation Appeal Board (Jo-Ann Stores)*, (Pa. Cmwlth., No. 436 C.D. 2015, filed Sept. 3, 2015) (Colins, S.J.), slip op. at 4.

Here, too, we must reject Claimant's attempt to introduce the evidence adduced in the parallel proceeding related to the January 2011 injury into this case. The only order under appeal to this Court is the Board's affirmance of the WCJ's denial of Claimant's claim petition related to the July 6, 2012 incident. Further, a WCJ's decision regarding whether to consolidate related actions is discretionary, not mandatory. 34 Pa. Code § 131.30(a) ("Where proceedings involve a common question of law or fact, the judge may consolidate the proceedings for hearing on all matters in issue, and may make any appropriate orders concerning the conduct

14

of the proceedings to avoid any unnecessary costs or delay."). Thus, our review is confined to determining whether the Board properly affirmed the denial of the claim petition and we have concluded that it has. Claimant raises the possibility that the ultimate conclusion by the Board on the suspension petition may conflict with the Board's decision in this case; however, at this juncture, this argument is speculative and regardless such an argument is best addressed in an appeal from a decision on the suspension petition.

Accordingly, the order of the Board is affirmed.[7]

_____
JAMES GARDNER COLINS, Senior Judge

---

[7] Claimant also cites the "reasoned decision" requirement of Section 422(a) of the Act in her brief, although she does not specifically argue that the WCJ's decision was not a reasoned decision. Section 422(a) requires that the WCJ "clearly and concisely" explain the rationale for his decision to enable "meaningful appellate review" by specifying the evidence on which he relies, articulating the objective basis for credibility determinations and explaining the reasons for rejecting or discrediting competent evidence. 77 P.S. § 834; *Daniels v. Workers' Compensation Appeal Board (Tristate Transportation)*, 828 A.2d 1043, 1051-53 (Pa. 2003). As described above, the WCJ in this matter provided ample explanation for crediting the testimony of Employer's fact witnesses over Claimant regarding the events of July 6, 2012. Furthermore, the WCJ's finding that Dr. Kahanovitz was more credible than Dr. Verna was based on specifically identifiable and objectively reasonable bases supported by the record, namely Dr. Kahanovitz's training as a board-certified orthopedic surgeon more qualified to issue opinions on diagnosis and causation and Dr. Verna's reliance on Claimant's explanation of the July 6, 2012 incident, which the WCJ had discounted, in concluding her need for treatment arose on that date. (WCJ Decision and Order, F.F. ¶10.) Accordingly, there was no violation of the Section 422(a) "reasoned decision" requirement.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cindi Martzen, : 
         : 
         Petitioner : 
         : 
         v. : No. 436 C.D. 2015
         : 
Workers' Compensation Appeal Board : 
(Jo-Ann Stores), : 
         : 
         Respondent : 

## **O R D E R**

AND NOW, this 2nd day of August, 2016, it is hereby ORDERED that the order of the Workers' Compensation Appeal Board in the above-captioned matter is AFFIRMED.

_____

JAMES GARDNER COLINS, Senior Judge