IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Melissa Walter,      :
           Petitioner      :
     :
         v.      :    No. 139 C.D. 2015
     :    Submitted: July 10, 2015
Workers' Compensation Appeal      :
Board (Evangelical Community      :
Hospital),      :
         Respondent      :

BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
               HONORABLE MARY HANNAH LEAVITT, Judge
               HONORABLE ANNE E. COVEY, Judge

OPINION BY
JUDGE LEAVITT                      FILED: November 23, 2015

Melissa Walter (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) reversing, in part, a decision of the Workers' Compensation Judge (WCJ) on a termination petition. The WCJ found that Claimant had recovered from some work injuries but not others. In addition, the WCJ expanded a list of Claimant's work injuries and found that Claimant had not recovered from a newly recognized injury. The Board concluded that the WCJ erred in correcting the description of Claimant's work injury because her employer did not have an adequate opportunity to contest the corrective amendment. Because the record shows otherwise, we reverse that conclusion of the Board.

Claimant was employed by Evangelical Community Hospital (Employer) as an Emergency Medical Technician. On May 20, 2007, Claimant injured her left shoulder while lifting a patient. Employer issued a Notice of

Compensation Payable (NCP) describing the work injury as a left shoulder "strain" and paying total disability benefits. Reproduced Record at 2a (R.R. ___). Claimant underwent shoulder surgery on August 1, 2007.

Employer sought to terminate benefits as of December 2008. Claimant filed an answer denying that she had fully recovered. Claimant also filed two review petitions asserting that the NCP's description of injury should be amended to add several other left shoulder conditions.[1] On February 24, 2010, a WCJ denied the termination petition and granted the review petitions. The WCJ amended the NCP to add the following conditions to the work injury:

> [L]eft impingement syndrome, tendonosis, distal supraspinatus left, sensitization left shoulder, left AC joint synovitis, left infraspinatus muscle atrophy, and left shoulder scapular dyskinesia[.]

WCJ Decision, February 24, 2010, at 11, Conclusion of Law No. 4; R.R. 25a.

On July 23, 2010, Claimant underwent a second shoulder surgery described as a "left open suprascapular nerve decompression." R.R. 31a. Employer paid for this surgery after a utilization review determined that it was a reasonable and necessary treatment. *Id.*

Thereafter, Employer filed the instant termination petition, alleging that Claimant had fully recovered from her work injury as of April 29, 2011, the date of an independent medical examination (IME). Claimant filed an answer

---

[1] The first review petition sought to add "left rotator cuff tear, left impingement syndrome, tendonosis, distal supraspinatus left, sensitization left shoulder, left AC joint synovitis, and left infraspinatus muscle atrophy." WCJ Decision, February 24, 2010, at 1, Finding of Fact No. 2; R.R. 15a. The second review petition sought to add "left shoulder scapular dyskinesia." WCJ Decision, February 24, 2010, at 1, Finding of Fact No. 4; R.R. 15a.

denying that she was fully recovered. The petition was assigned to a WCJ for a hearing.

Employer presented the deposition of David L. Rubenstein, M.D., a board certified orthopedic surgeon who did the IME on April 29, 2011. Dr. Rubenstein reviewed Claimant's medical records, including test results, and the list of accepted work injuries established in February 2010. Dr. Rubenstein testified that Claimant's work injury was a traction, or pulling, type of injury. Dr. Rubenstein noted that Claimant has had two shoulder surgeries: arthroscopic decompression surgery on August 1, 2007, and a surgical release of the suprascapular nerve on July 23, 2010. Although Dr. Rubenstein agreed that Claimant's first shoulder surgery was appropriate, he was unsure whether Claimant's second surgery was warranted because he did not see electrodiagnostic evidence of suprascapular nerve compression in the medical records.

Claimant told Dr. Rubenstein that her surgeries were not beneficial and that she had constant pain in her shoulder. Claimant held her left shoulder lower than her right shoulder. Dr. Rubenstein testified this could be caused by a neurologic problem, but more likely it was volitional posturing. Upon physical examination, Claimant self-limited her shoulder range of motion and complained of pain. Dr. Rubenstein found no objective basis to her subjective complaints of pain and suggested that Claimant was magnifying her symptoms. Dr. Rubenstein opined that Claimant had fully recovered from all diagnoses that are part of the work injury.[2]

---

[2] Employer also presented testimony from Claimant's stepfather and two investigators who conducted surveillance of Claimant's daily activities. The testimony concerned the extent of Claimant's physical capabilities and whether she was working at her stepfather's business. Because this testimony is not relevant to the issue on appeal, we do not summarize it.

3

Claimant testified that her May 2007 work injury is the only trauma she has sustained to her left shoulder. Claimant stated that she has constant pain and a burning sensation in her shoulder that prevents her from doing anything with her left arm. Claimant takes pain medication and does home exercises. She does not believe that she can work in any capacity.

Claimant presented the medical deposition of Matthew W. Reish, M.D., a board certified orthopedic surgeon, who began treating Claimant on July 7, 2009. Because Claimant held her left shoulder lower than her right shoulder and complained of pain, Dr. Reish referred Claimant for a nerve study, which revealed a chronic severe left suprascapular neuropathy. Dr. Reish opined that this condition is part of the work injury. Dr. Reish performed suprascapular nerve decompression surgery on July 23, 2010. Claimant's strength improved post-surgery, but she continued to complain of shoulder pain, for which he had prescribed medication. Dr. Reish did not expect Claimant's condition to improve, but he believed that Claimant could work with restrictions on lifting, climbing and overhead work.

Dr. Reish testified that Claimant no longer had signs of some components of the work injury, namely, the tendonosis, AC joint synovitis and infraspinatus muscle atrophy. Dr. Reish opined that Claimant continues to have left impingement syndrome, a distal supraspinatus problem, shoulder sensitization, scapular dyskinesia, and suprascapular neuropathy.

The WCJ made several credibility determinations.[3] The WCJ credited Claimant's testimony that she has not fully recovered but rejected Claimant's

[3] The WCJ has complete authority over questions of credibility, conflicting medical evidence and evidentiary weight. *Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.)*, **(Footnote continued on the next page . . .)**

description of her symptoms, finding that Claimant was magnifying them. The WCJ rejected Dr. Rubenstein's opinion that Claimant had fully recovered from all work-related diagnoses but credited his opinion, corroborated by Dr. Reish, that Claimant had fully recovered from three, *i.e.*, tendonosis, AC joint synovitis and infraspinatus muscle atrophy. The WCJ credited the testimony of Dr. Reish that Claimant's work-related injuries continue to exist and that Claimant's left suprascapular neuropathy was sustained in the 2007 work injury. Consistent with these findings, the WCJ granted the termination for tendonosis, AC joint synovitis and infraspinatus muscle atrophy, denied the termination for the remaining diagnoses and expanded the work injury to include left suprascapular neuropathy, from which Claimant has not fully recovered.

Employer appealed the WCJ's addition of left suprascapular neuropathy to the work injury description, arguing that it was error to do so in the absence of a review petition.[4] The Board agreed and reversed this part of the WCJ's decision. The Board concluded that although a WCJ can expand the work injury in the absence of a review petition, it was inappropriate to do so here because Employer did not have notice that the injury description was at issue in the proceeding. Claimant then petitioned for this Court's review.[5]

---

**(continued . . .)**

666 A.2d 383, 385 (Pa. Cmwlth. 1995). The WCJ is free to accept, in whole or in part, the testimony of any witness, including medical witnesses. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995).

[4] Employer did not appeal the partial denial of the termination for the previously established components of the work injury: left impingement syndrome; distal supraspinatus left; shoulder sensitization; and scapular dyskinesia.

[5] This Court's review of an order of the Board determines whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether **(Footnote continued on the next page . . .)**

5

On appeal, Claimant raises one issue for our consideration. Claimant argues that the Board erred. She argues that Employer had sufficient notice of the potential amendment to her list of work injuries.

Section 413(a) of the Workers' Compensation Act[6] (Act), allows a WCJ to amend an NCP that is incorrect in some material aspect. Section 413(a) states, in relevant part, as follows:

> *A workers' compensation judge of the department may, at any time, review and modify or set aside a notice of compensation payable* and an original or supplemental agreement or upon petition filed by either party with the department, or *in the course of the proceedings under any petition pending before such workers' compensation judge*, if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.

77 P.S. §771 (emphasis added). In *Cinram Manufacturing, Inc. v. Workers' Compensation Appeal Board (Hill)*, 975 A.2d 577 (Pa. 2009), the Supreme Court elaborated on Section 413(a) and explained the "corrective amendment" to an accepted work injury does not require a review petition. *Id.* at 580-81. Rather, the WCJ can order the correction where the evidence supports it.

Here, the Board acknowledged the WCJ's power to make a corrective amendment without a review petition. However, the Board noted that *Cinram* requires that an employer must be aware that a corrective amendment is a matter in

---

**(continued . . .)**
constitutional rights were violated or an error of law was committed. *Cytemp Specialty Steel v. Workers' Compensation Appeal Board (Crisman)*, 39 A.3d 1028, 1033 n.6 (Pa. Cmwlth. 2012).

[6] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §771.

controversy in the proceeding.  In doing so, the Board focused on the following language from *Cinram*:

> It should also be noted that the language of Section 413(a) is discretionary – a workers' compensation judge "may" at any time correct a notice of compensation payable.  77 P.S. §771. The Legislature therefore contemplated that there are circumstances in which it would be inappropriate for a workers' compensation judge to direct a corrective amendment of a notice of compensation payable, including in a termination proceeding.[7]  Moreover, the procedures applied by a workers' compensation judge must obviously comport with due process norms and, therefore, *reasonable prior notice and a fair opportunity to respond must be provided to the employer* prior to the implementation of a corrective amendment.
>
> FN7.  For this reason, *claimants would be well advised that they should give fair notice of the grounds for contemplated corrective amendments at the earliest opportunity.*  On the other hand, in applying their discretion, workers' compensation judges must remain cognizant of the remedial purposes of the Workers' Compensation Act.

*Cinram*, 975 A.2d at 582 (internal citations omitted) (emphasis added).

The Board construed the Supreme Court's analysis as follows.  First, the claimant must provide notice of a corrective amendment to the employer "early in the pendency of the proceedings in a matter…at the time of presenting [the employer's] case-in-chief, rather than having to come back to present evidence on rebuttal."  Board Adjudication at 10.[7]  Second, "*such notice must be overt*" and not implied from the circumstances.  Board Adjudication at 8 (emphasis in original).

---

[7] In formulating this timeframe, the Board relied on this Court's decision in *Ross v. Workers' Compensation Appeal Board (International Paper)*, 859 A.2d 856 (Pa. Cmwlth. 2004).  In *Ross*, the claimant's reinstatement petition was denied because it was filed beyond the 500-week limitation period for such petitions.  The claimant argued that the employer had waived the

**(Footnote continued on the next page . . .)**

With those principles in mind, the Board found that Claimant did not show that she gave Employer "any overt notice that [she] was seeking a corrective amendment to add the left suprascapular neuropathy to the injury description." Board Adjudication at 7-8. The Board found that Claimant's statement at the first WCJ hearing that her July 2010 surgery was for the work injury did not constitute overt notice. The Board further determined that the notice Employer received at Dr. Reish's deposition testimony was untimely because by that point Employer had presented its case-in-chief with Dr. Rubenstein's deposition.

Claimant argues that Employer had adequate notice of the corrective amendment because it was announced on the first day of the hearing. That Employer knew that Claimant believed that suprascapular neuropathy was a work injury is apparent from the depositions of both medical experts.

We return to *Cinram*, where the Supreme Court cautioned that due process requires that an employer be given a reasonable opportunity to contest a corrective amendment. In *Cinram*, the NCP described the work injury as a lumbar strain/sprain. In the termination proceeding the claimant's medical expert testified that the work injury was an aggravation of a pre-existing disc herniation that caused nerve impingement. The WCJ credited that evidence, denied the termination petition and amended the NCP to include nerve impingement. The

---

**(continued . . .)**
limitation period defense because it did not assert that affirmative defense in its answer. This Court disagreed, holding it was sufficient that the employer raised the defense at a pre-trial conference and again at the first WCJ hearing. Unlike *Ross*, this case does not involve an affirmative defense, which can be waived. Further, in *Ross*, we did not require an issue to be raised no later than the first hearing; we simply noted that the employer had done so. We explained that if new allegations are raised during litigation, the opposing party must show prejudice caused by the late timing.

Supreme Court affirmed. The Supreme Court found it significant that the employer's experts addressed the nerve impingement in their testimony and opined that it was unrelated to the work incident. The Supreme Court also noted that the employer did not specify what other evidence it would have presented had it been given express notice that the claimant sought a corrective amendment. Accordingly, it affirmed the WCJ's corrective amendment.

This Court's decision in *Krushauskas v. Workers' Compensation Appeal Board (General Motors)*, 56 A.3d 64 (Pa. Cmwlth. 2012), *petition for allowance of appeal denied*, 63 A.3d 1250 (Pa. 2013), is also instructive. In that case, the claimant filed a penalty petition alleging that his employer violated the Act because it had stopped paying disability benefits. The employer defended on the theory that the claimant had voluntarily retired. The WCJ denied the penalty petition and retroactively suspended the claimant's benefits despite the fact that the employer had not filed a suspension petition. The claimant appealed, arguing that the suspension was improper absent a petition seeking that relief. We explained the requisite notice required in workers' compensation proceedings as follows:

> It is well-established that the rules governing pleadings in workers' compensation cases do not mirror the Pennsylvania Rules of Civil Procedure and should be liberally construed. Furthermore, we have never required absolute and unreasonable strictness in pleadings in workers' compensation cases, and, if one party effectively puts the adverse party on notice as to the theory of relief which is sought, the WCJ will be authorized to grant the relief requested. A WCJ is empowered under the Act to take appropriate action based upon the evidence presented and a claimant *can be placed on notice of the relief sought during the proceedings*.

9

*Krushauskas*, 56 A.3d at 69 (internal quotations and citations omitted) (emphasis added). Thus, "[w]hether the claimant [or employer] has adequate notice depends on the totality of the circumstances of a particular case," including the procedural and factual history and the nature of the petition that was filed. *Id*. at 71.[8]

In sum, Section 413(a) of the Act specifically authorizes the WCJ to amend the NCP during litigation of any petition where the evidence presented shows that the NCP is materially incorrect. Whether an employer has had a fair opportunity to contest the corrective amendment is determined on a case-by-case basis by looking at the totality of circumstances.[9] The employer must have the opportunity to contest a corrective amendment.

At the first WCJ hearing on July 19, 2011, Employer explained that it was seeking a termination based on full recovery from the work injury and intended to depose Dr. Rubenstein. Claimant's counsel responded as follows:

> [Claimant] had surgery just about a year ago on July 23, 2010 by Dr. Reish. She continues to be symptomatic at this time. She continues to treat. … So at this point it is our position that she is not fully recovered. She remains in treatment. She remains on medication, and continues to have restrictions for the shoulder.

---

[8] Based on the "specific facts" of the case, we held that a suspension was permissible because the claimant had ample notice during the litigation that the employer had stopped paying benefits because it believed it was entitled to a suspension due to the claimant's retirement. *Krushauskas*, 56 A.3d at 72.

[9] In the abstract, the Board's announced two-part test for determining notice of a corrective amendment may be an appropriate summary of *Cinram*. It is not clear what the Board means by overt notice. Notably, in *Cinram,* the claimant did not make a definitive statement on the record that he sought a corrective amendment. The Board's application of its newly announced test in this case led to the wrong result for the reasons set forth in this opinion. Here, Employer had overt notice that the suprascapular neuropathy was work-related at least by the time of the utilization review, before Employer filed its termination petition.

10

R.R. 37a-38a. This exchange between the WCJ and Claimant's counsel followed:

> **[WCJ]**: …the surgeries that were performed, is it your position that those surgeries were related to the work injury or were they for a nonwork condition and simply interrupted the treatment for the work injury?
>
> **[Claimant's counsel]**: There have been surgeries for the work injury. *The most recent surgery for the work injury was in July of 2010, a year ago.*

R.R. 39a (emphasis added). The July 2010 surgery was a suprascapular nerve decompression, a fact of which Employer was aware from a utilization review proceeding questioning the need for the decompression surgery. This procedure was done to relieve Claimant's suprascapular neuropathy.

In both his April 2011 IME report and his October 2011 deposition testimony, Dr. Rubenstein testified about Dr. Reish's diagnosis of a chronic suprascapular neuropathy. Dr. Rubenstein stated that he did not see evidence in the records that Claimant had a suprascapular nerve injury. At his February 2012 deposition, Employer's counsel cross-examined Dr. Reish on his opinion that Claimant's work injury included suprascapular neuropathy. It is unclear what additional evidence Employer could have presented on whether the suprascapular neuropathy was work-related. Although Employer contends that Dr. Rubenstein did not address a suprascapular nerve injury, he did in fact do so, commenting on the lack of evidence of one.

In short, Employer had adequate notice that Claimant considered chronic suprascapular neuropathy part of the work injury. The Board erred in concluding that the WCJ was not authorized to expand the description of the work injury to include that diagnosis and correct a material defect in the NCP.

11

Employer argues that, in any case, substantial evidence does not support a finding that the amendment to the NCP was "corrective," meaning that left suprascapular neuropathy was part of the 2007 work injury. Accordingly, the WCJ could not amend the NCP without a review petition.

An amendment is corrective if the WCJ adds a diagnosis that is part of the original work injury. *Cinram*, 975 A.2d at 580-81. On the other hand, where a claimant develops another new injury as a consequence of the original injury, the WCJ cannot add that injury to the NCP without a review petition. *Id*. at 581. The party seeking to amend the NCP has the burden of proving that the NCP is materially incorrect. *Namani v. Workers' Compensation Appeal Board (A. Duie Pyle)*, 32 A.3d 850, 856 n.4 (Pa. Cmwlth. 2011).

Here, the record confirms that the WCJ made a corrective amendment. Dr. Reish testified that the traction mechanism of Claimant's 2007 work injury caused her suprascapular nerve injury, explaining that "it's reasonable to believe that this happened from her original injury." R.R. 175a. Dr. Rubenstein agreed that the work-related shoulder injury was a traction type injury. This evidence supports the conclusion that suprascapular neuropathy was part of the original work injury and not a consequential condition.

In sum, the Board erred in reversing the portion of the WCJ's order amending the NCP to include an additional left shoulder injury. Accordingly, the order of the Board in that respect is reversed.

_____
MARY HANNAH LEAVITT, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Melissa Walter,                          :
                    Petitioner           :
                                         :
              v.                         :    No. 139 C.D. 2015
                                         :
Workers' Compensation Appeal             :
Board (Evangelical Community             :
Hospital),                               :
                    Respondent           :


# **O R D E R**

AND NOW, this 23rd day of November, 2015, the order of the Workers' Compensation Appeal Board dated January 6, 2015, in the above-captioned matter is hereby REVERSED inasmuch as it reversed the Workers' Compensation Judge's expansion of the description of the work injury and AFFIRMED in all other respects.

_____
MARY HANNAH LEAVITT, Judge