# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Woodloch Spa Resort and Zenith   :
Insurance Company,   :
          Petitioners   :
   :
   v.   : No. 1174 C.D. 2017
   : SUBMITTED: March 23, 2018
Workers' Compensation Appeal   :
Board (Regina Acquavella and   :
Norguard Insurance Company),   :
          Respondents   :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                  FILED: June 4, 2018

Woodloch Spa Resort (Employer) and Zenith Insurance Company (Zenith) petition for review from the July 26, 2017 order of the Workers' Compensation Appeal Board (Board) affirming the decision of the workers' compensation judge (WCJ) which granted the claim petition of Regina Acquavella (Claimant), found Zenith and Employer's prior workers' compensation insurance carrier, Norguard Insurance Company (Norguard), equally liable for payment of Claimant's workers' compensation benefits, and denied the termination petition of Employer/Zenith. We vacate and remand for the reasons set forth herein.

## Background

This matter involves two separate work injuries and two separate insurance carriers, Norguard and Zenith. Claimant worked for Employer as a housekeeper

from April 2010 through July 13, 2014. Notes of Testimony (N.T.), 7/16/15, at 13, 41. On October 23, 2012, Claimant sustained an injury to her left knee (2012 work injury) when she slipped in the parking lot behind Employer's loading dock. *Id.* at 16. Employer's Human Relations (HR) department was closed at the time, so Claimant reported her injury to Employer the next morning. *Id.* at 17. Claimant thereafter sought treatment with Jeffrey A. Mogerman, M.D. N.T., 10/21/15, at 13. Claimant was diagnosed with a torn meniscus which required surgical intervention by arthroscopy on three separate occasions.[1] *Id.* at 16. Employer's workers' compensation insurance carrier at the time of the 2012 work injury was Norguard. N.T., 9/29/15, at 38. Employer did not issue a Notice of Temporary Compensation Payable (NTCP) or otherwise accept the 2012 work injury. Payment of Claimant's medical expenses related to the 2012 work injury was made by her private insurance company. N.T., 7/16/15, at 21. Claimant received no wages during those times she was out of work for treatment related to the 2012 work injury. *Id.*

Shortly after Claimant's first arthroscopic surgery, in December 2012, Claimant was released to return to light-duty work, at which point her duties remained the same except Claimant did not operate the power washer or lift anything. N.T., 7/16/15, at 22. On July 13, 2014, Claimant was working her shift when she tripped while walking up some stairs and landed on her left knee (2014 work injury). *Id.* at 25. Claimant finished her shift that night and filled out an incident report the next morning. *Id.* Claimant was directed by Employer's HR department to seek treatment at urgent care. *Id.* Employer accepted the 2014 work

---

[1] Arthroscopic surgery was performed on Claimant's left knee by Dr. Mogerman on December 21, 2012, September 16, 2013, and April 28, 2014. Notes of Testimony (N.T.), 10/21/15, Ex. 5-7.

injury and issued an NTCP on August 8, 2014.[2] Certified Record (C.R.), Item No. 23, NTCP. Zenith was the workers' compensation insurance carrier for Employer on the date of the 2014 work injury. N.T., 7/16/15, at 34.

A fourth arthroscopic surgery was scheduled to determine the damage to Claimant's knee, however, that surgery was cancelled due to Claimant's unrelated illness. N.T., 7/16/15, at 27. Claimant elected not to reschedule the fourth surgery and instead sought the opinion of Jack Henzes, M.D. *Id*. Dr. Henzes recommended a total knee replacement. N.T., 10/21/15, at 13.

Claimant filed a claim petition on September 11, 2014, alleging the 2012 injury resulted in a left knee injury, including but not limited to a torn meniscus which required surgical intervention. Supplemental Record (S.R.), Item No. 2, Claim Petition. In her claim petition, Claimant sought medical benefits for the period of October 23, 2012 through December 21, 2012, and medical and wage loss benefits for the period of December 21, 2012 through January 1, 2013.[3] *Id*.

Employer/Zenith filed an answer to the claim petition, denying all averments.[4] Employer/Zenith further averred Claimant was not within the scope of employment

---

[2] Employer previously issued a medical-only NTCP on July 24, 2014. Certified Record (C.R.), Item No. 25, NTCP. The NTCP issued on August 8, 2014 was for medical costs and lost wages. *Id.*, Item No. 23, NTCP.

[3] The September 11, 2014 claim petition only covers medical costs and wage loss related to the 2012 work injury. Medical costs and wage losses related to the 2014 work injury were covered by the August 8, 2014 NTCP. N.T., 10/9/14, at 19.

[4] Employer/Zenith also asserted that the claim petition was barred by the statute of limitations and notice provisions set forth in the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708, as well as the doctrines of res judicata and/or collateral estoppel. S.R., Item No. 4, Defendant's Answer to Claim Petition. These additional issues were not raised in their appeal to this Court.

3

at the time of her injury, Claimant had not suffered a disabling injury, Claimant's medical condition was the result of a pre-existing injury or medical condition and not related to her work activity, and medical services rendered to Claimant were unreasonable, unnecessary, and/or unrelated to the alleged injury or Claimant's work activities. *Id.* Employer/Zenith asserted entitlement to any and all offsets and credits available under the Workers' Compensation Act (Act)[5] and requested supersedeas.[6] *Id.*

On November 6, 2014, Norguard filed a petition for joinder, naming Zenith as an additional defendant. S.R., Item No. 6, Petition for Joinder. Employer/Zenith subsequently filed a termination petition on March 6, 2015, alleging Claimant had fully recovered from the 2014 work injury.[7] C.R., Item No. 2, Petition to Terminate. According to Employer/Zenith, the evidence of Claimant's recovery was based on

---

[5] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

[6] Employer's supersedeas request was denied by interlocutory order issued on March 25, 2015. C.R., Item No. 6, Interlocutory Order at 1. An employer can request supersedeas for workers' compensation matters, asking that the grant of benefits be stayed pending the appeal. "Section 443 of the Act [77 P.S. § 999] allows for reimbursement of payments [made] in cases where a supersedeas request has initially been denied but in the final outcome it is determined that such compensation was not, in fact, payable." *Robb, Leonard, and Mulvihill v. Workers' Comp. Appeal Bd. (Hooper)*, 746 A.2d 1175, 1178 n.4 (Pa. Cmwlth. 2000). A request for, and denial of, supersedeas must be made before a party can seek reimbursement through the Supersedeas Fund. *Mark v. Workers' Comp. Appeal Bd. (McCurdy)*, 894 A.2d 229, 233 (Pa. Cmwlth. 2006). The Supersedeas Fund was created in light of the impracticality of recouping benefits paid to claimants. *J.P. Lamb Constr., Inc. v. Workers' Comp. Appeal Bd. (Bureau of Workers' Comp.)*, 909 A.2d 18, 23 (Pa. Cmwlth. 2006).

[7] Filings related to the 2012 work injury and 2014 work injury were assigned separate docket numbers by the Department of Labor and Industry. The WCJ issued separate but identical decisions for each docket number. The Board issued one decision, which referenced both docket numbers. As those matters were never consolidated, a separate appeal should have been filed for each docket. On November 28, 2017, this Court granted an application by Employer/Zenith to supplement the record and include those documents not included with the certified record. In light of that, and in the interests of judicial economy, we shall treat the separate matters as having been consolidated.

4

an independent medical exam performed on January 29, 2015, by Michael P. Banas, M.D. *Id.* Claimant denied that she had recovered and continued to claim that she was totally disabled. C.R, Item No. 4, Claimant's Answer. Norguard likewise filed an answer, denying that Claimant had fully recovered. *Id.*, Item No. 5, Norguard's answer.

Hearings were held before the WCJ on October 9, 2014, December 18, 2014, March 24, 2015, July 16, 2015, and September 29, 2015. Claimant testified on her own behalf and Employer/Zenith presented the testimony of Melissa Latsch, Employer's HR Generalist. Medical testimony was provided by deposition. Dr. Banas testified at a December 3, 2015 deposition on behalf of Employer/Zenith. Norguard presented the January 13, 2016 deposition testimony of Roger M. Componovo, M.D. Claimant presented the October 21, 2015 deposition testimony of her treating physician, Dr. Henzes.

On July 28, 2016, the WCJ issued an order granting benefits to Claimant for wage loss and medical costs. C.R., Item No. 9, WCJ Decision at 17. The WCJ accepted the testimony of Claimant and found she was acting within the scope of her employment at the time of the 2012 injury. *Id.*, Finding of Fact (F.F.) No. 18. The WCJ further found that Claimant's need for a total knee replacement was a result of the 2012 work injury, which was aggravated by the 2014 work injury. *Id.*, F.F. No. 47. Norguard was directed to pay benefits for the period from October 23, 2012 through July 12, 2014. *Id.* at 17. From July 13, 2014, and thereafter, both Norguard and Zenith were directed to pay Claimant lost wages and her ongoing medical expenses. *Id.*

Employer/Zenith appealed the decision of the WCJ. The Board affirmed the decision and order of the WCJ on July 26, 2017. This appeal followed.

5

**Issues**

Employer/Zenith allege the following errors:[8]

1. The Board erred in affirming the WCJ's decision because the WCJ failed to issue a reasoned decision as required by Section 422(a) of the Act, 77 P.S. § 834.

2. The Board erred in determining that Zenith is liable for 50 percent of Claimant's workers' compensation benefits as the evidence establishes Norguard is solely responsible for payment of those benefits.

**Discussion**

First, Employer/Zenith argue the WCJ failed to issue a reasoned decision as required by Section 422(a) of the Act. Section 422(a) provides, in pertinent part, that "[a]ll parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached." 77 P.S. § 834. Further, when faced with conflicting evidence, the WCJ must adequately explain the reasons for rejecting or discrediting competent evidence. *Id.* Employer/Zenith argue the WCJ failed to set forth any explanation as to why he accepted or rejected the testimony of the various medical experts. We agree.

"[A] decision is 'reasoned' for purposes of Section 422(a) if it allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards." *Daniels*

_____

[8] Our review of an order of the Board is limited to a determination of whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated, or whether an error of law was committed. *Walter v. Workers' Comp. Appeal Bd. (Evangelical Cmty. Hosp.)*, 128 A.3d 367, 371 n.5 (Pa. Cmwlth. 2015).

6

*v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). In a case where the WCJ "has had the advantage of seeing the witnesses testify and assessing their demeanor, a mere conclusion as to which witness was deemed credible, . . . could be sufficient to render the decision adequately 'reasoned.'" *Id.* at 1053. Resolution of conflicting medical testimony, however, where the medical experts testified solely by deposition, cannot be supported by a mere announcement that one expert was deemed more credible than another. *Id.* "[S]ome articulation of the actual objective basis for the credibility determination must be offered for the decision to be a 'reasoned' one which facilitates effective appellate review." *Id.*

As to Claimant, she testified live before the WCJ, who was able to assess her demeanor. The WCJ accepted Claimant's testimony as to the circumstances surrounding the 2012 work injury and deemed as credible Claimant's testimony relating to the intractable knee pain she experienced prior to the 2014 work injury. C.R., Item No. 9, WCJ Decision, F.F. Nos. 18, 46. Consequently, the WCJ's mere conclusion that Claimant was credible is sufficient under *Daniels.* The WCJ's credibility determinations regarding the medical experts, however, require further analysis.

With regard to the testimony of the three medical experts, the WCJ made limited credibility findings. Dr. Henzes' testimony was accepted as "competent, credible and worthy of belief," without more. C.R., Item No. 9, WCJ Decision, F.F. No. 47. As to Zenith's expert, the WCJ rejected

> as not credible, persuasive nor convincing the testimony of Dr. Banas, having determined that [C]laimant's work injury of July 13, 2014 resolved and [C]laimant's current complaints stem solely from the October 23, 2012, injury and other degenerative changes. Norguard's medical expert, Dr. Componovo totally disagreed with Dr. Banas, who felt the [C]laimant had totally recovered from the

7

injuries of October 23, 2012, that the July 2014, incident materially contributed to [C]laimant's need for a knee replacement and that the arthroscopies performed by Dr. Mogerman are not related to her need for a total knee replacement.

*Id.*, F.F. No. 45. The WCJ made no credibility finding whatsoever with regard to the testimony of Dr. Componovo.[9]

While the WCJ discusses the various medical testimony to an extensive degree, the conclusions reached by his analyses are ambiguous at best. For example, the WCJ states in his 34th finding of fact that "[Dr. Banas] reviewed the report of Dr. [Componovo], disagreeing that [C]laimant did not have a bone on bone situation prior to July 13, 2014, as the records from the arthroscopic surgeries demonstrated the presence of exposed raw bone prior to April 2014." C.R., Item No. 9, WCJ Decision, F.F. No. 34. It is unclear whether the WCJ is stating that Dr. Banas disagreed with the report of Dr. Componovo, or that Dr. Componovo disagreed with the opinion of Dr. Banas that the condition of Claimant's knee was "bone on bone."[10]

For its part, the Board simply asserts that "credibility determinations were made." C.R., Item No. 12, Bd. Decision at 14. We agree the WCJ made credibility

---

[9] The WCJ found that Claimant's need for a total knee replacement was a result of the 2012 work injury "proposed by Drs. Henzes and Banas, along with an aggravation being the [2014 work injury], which contributed to her renewed physical disability as proposed by Dr. [Componovo]." C.R., Item No. 9, WCJ Decision, F.F. No. 47. The Board cites this finding of fact as an indication that the WCJ credited the testimony of Dr. Componovo. C.R., Item No. 12, Bd. Decision at 13-14. We disagree and conclude this finding of fact is simply another indication that the WCJ's decision was not reasoned, as it appears to credit the testimony of Dr. Banas, who was explicitly *discredited* in a prior finding of fact.

[10] The WCJ's regrettable overuse of pronouns in lieu of personal names only adds to the confusion. Finding of Fact No. 25 provides as follows: "On re-cross examination by Norguard, the witness agreed that she did sustain direct trauma to the patella when she was injured in July of 2014." C.R, Item No. 9, F.F. No. 25. The witness testimony is that of Dr. Henzes, and the "she" referenced in the sentence is Claimant.

findings pertaining to Drs. Banas and Henzes. However, there is a complete absence of clarity as to the reasons for those determinations, and the WCJ's decision at no time makes a credibility determination with regard to Dr. Componovo.

After a painstaking and thorough review of the complete record, it is simply not possible for this Court to ascertain how the WCJ resolved conflicts in the medical testimony. Resolution of conflicting testimony cannot be resolved with a mere announcement that the WCJ deemed one expert more credible and persuasive than another. *Daniels*, 828 A.2d at 1053. Consequently, we conclude the decision of the WCJ, as written, does not allow for adequate review by this Court and does not meet the requirements set forth in *Daniels*. A remand to the WCJ is required so that an amended decision may be issued which comports with the requirements of Section 422(a) and *Daniels*.

As we have concluded, the decision of the WCJ was not sufficiently reasoned as required by Section 422(a), we need not address the remaining issues.

## Conclusion

The order of the Board is vacated, and we remand this matter to the Board for further remand to the WCJ to issue an amended decision that explains the basis for his credibility determinations and complies with Section 422(a) of the Act.

_____
ELLEN CEISLER, Judge

Judge Covey dissents.
Judge Fizzano Cannon did not participate in the decision of this case.

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Woodloch Spa Resort and Zenith   :
Insurance Company,   :
                Petitioners   :
  :
           v.   :   No. 1174 C.D. 2017
  :
Workers' Compensation Appeal   :
Board (Regina Acquavella and   :
Norguard Insurance Company),   :
             Respondents   :

## O R D E R

AND NOW, this 4th day of June, 2018, the order of the Workers' Compensation Appeal Board, dated July 26, 2017, is hereby vacated and this matter is remanded for further proceedings consistent with this opinion. Jurisdiction is relinquished.

_____

ELLEN CEISLER, Judge