# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Township of Lower Makefield and : <br>
Delaware Valley Workers' : <br>
Compensation Trust, : <br>
            Petitioners : <br>
             : <br>
      v. : No. 1197 C.D. 2018 <br>
             : SUBMITTED: January 18, 2019 <br>
Workers' Compensation Appeal : <br>
Board (Stewart), : <br>
            Respondent :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge <br>
               HONORABLE PATRICIA A. McCULLOUGH, Judge <br>
               HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION <br>
BY JUDGE CEISLER                             FILED: May 13, 2019

The Township of Lower Makefield (Employer) petitions this Court for review of the August 7, 2018 order of the Workers' Compensation Appeal Board (Board) which affirmed in part and reversed in part the decision of a workers' compensation judge (WCJ). The WCJ found that Howard Stewart (Claimant) had fully recovered from his February 12, 2003 work injury and granted Employer's petition to terminate Claimant's receipt of benefits under the Workers' Compensation Act (Act).[1] The Board reversed the WCJ on the basis that Employer failed to demonstrate a change

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 1-1041.4, 2501-2710.

in Claimant's physical condition since February 13, 2014, the date upon which a previous termination petition was denied.[2]  After review, we affirm.

## Background

Claimant worked for Employer as a truck driver.  On February 12, 2003, Claimant injured his back while hooking up a snow plow.  Certified Record (C.R.), Item No. 26, at 1.  Employer accepted Claimant's injury as a low back sprain by means of a notice of compensation payable (NCP) and paid him benefits for wage loss and medical expenses.  *Id.*  On August 11, 2008, Claimant and Employer entered into a compromise and release (C&R) agreement pursuant to Section 449(a) of the Act.[3]  *Id.* at 2.  Employer agreed to pay Claimant $190,000 as a lump sum for wage loss benefits.  *Id.* at 7.  Employer remained responsible for medical treatment arising from the work injury identified in the C&R as a low back sprain.  *Id.* at 8.

### A. Employer's First Termination Petition

Subsequent to the execution of the C&R, Employer filed a petition to terminate Claimant's medical benefits on the basis he was fully recovered from his work injury as of February 21, 2012.  In support of the petition, Employer presented the deposition testimony of Dr. Marc Manzione.  Claimant's family physician, Dr. David Miller, testified by deposition on Claimant's behalf.[4]  Claimant filed a penalty

---

[2] The Board affirmed the WCJ's denial of a penalty petition filed by Claimant in which he asserted Employer violated the Act when it failed to pay medical bills related to the February 12, 2003 work injury.

[3] Section 449(a) of the Act permits the parties to settle a workers' compensation claim. Added by the Act of June 24, 1996, P.L. 350, 77 P.S. § 1000.5(a).

[4] Claimant testified on his own behalf, but his testimony does not appear in the certified or reproduced records filed with this Court.  As the first WCJ decision is not before this Court, this defect in the record is not relevant.

2

petition, asserting Employer violated the Act by failing to pay his medical bills as required.

## 1. Employer's Evidence

Dr. Manzione, an orthopedic surgeon, testified by deposition on July 17, 2012. Notes of Testimony (N.T.), 7/17/12, at 7. He performed an independent medical examination (IME) of Claimant on February 21, 2012. *Id.* at 9. Dr. Manzione related the history provided by Claimant that he was lifting a large snowplow when he felt a pop and pain in his lower back. *Id.* The treatment Claimant received over the years included physical therapy, medication, and lumbar epidural injections. *Id.* at 10. As of the date of the IME, Claimant's treatment consisted of medication only. *Id.* Dr. Manzione noted that throughout the physical examination, Claimant moved slowly and grimaced occasionally. *Id.* at 12. Claimant's gait was slow and he complained of lower back pain when rising from his heels to his toes. *Id.* Claimant was able to rise from a prone or seated position without assistance, but he moved slowly when doing so. *Id.*

An examination of Claimant's lower back revealed tenderness in the mid- and lower-lumbar regions, and the range of motion in his lower back was limited in all directions. *Id.* Claimant experienced lower back pain at the extremes of all planes of motion and the straight leg raise and sitting root tests were positive for lower back pain. *Id.* at 12-13. The remainder of the examination was normal. *Id.* at 13.

Dr. Manzione reviewed Claimant's medical records, including magnetic resonance imaging (MRI) scans and X-rays of Claimant's lumbar spine. *Id.* at 14-18. Based on his review of Claimant's medical records and the results of the physical examination performed on February 21, 2012, Dr. Manzione opined that, within a reasonable degree of medical certainty, Claimant had recovered from the lumbar

sprain sustained as a result of the February 12, 2003 work injury. *Id.* at 19. Dr. Manzione did not believe a lumbar sprain would account for Claimant's symptoms nine years after the date of injury. *Id.* Rather, his symptoms were caused by a disc injury sustained at the L4-5 level of his lumbar spine and the subsequent development of lumbar degenerative disease. *Id.* Dr. Manzione believed the L4-5 disc injury was sustained at the same time as the lumbar sprain; however, Dr. Manzione understood that the accepted work injury under the C&R was a lumbar sprain, and Claimant had recovered from that injury. *Id.* at 23, 25. The lumbar sprain was a muscular injury that would not have caused the degenerative condition affecting Claimant's lumbar discs. *Id.* at 22.

On cross-examination, Dr. Manzione acknowledged that a March 5, 2012, report he drafted subsequent to the IME indicated that Claimant's lumbar sprain and L4-5 disc injury were both substantial factors in the development of Claimant's degenerative condition. *Id.* at 22. A second report, dated March 14, 2012, was drafted after Dr. Manzione received clarification on the nature of the accepted work injury. *Id.* at 23. In his second report, Dr. Manzione opined that the lumbar sprain had resolved and any remaining medical treatment required was related to Claimant's degenerative lumbar disease. *Id.*, Ex. No. 2.

### 2. Claimant's Evidence

Dr. Miller testified by deposition on February 27, 2013. Claimant first sought treatment for his work injury on February 12, 2003, the date it was sustained. *Id.* at 7. Claimant presented with severe pain in his lumbar region that radiated down his lower legs. *Id.* Upon physical examination, the lumbar spine revealed muscle spasm and tenderness. *Id.* Claimant's range of motion was reduced in all directions and the straight leg raising test was positive for pain. *Id.* at 7-8. As a result of the

4

February 12, 2003 examination, Dr. Miller diagnosed Claimant with an acute lumbar sprain and ordered an MRI to rule out a herniation. *Id.* at 8. An MRI performed two days after Claimant's work injury confirmed disc herniations, predominantly at the L4-5 levels. *Id.* at 9. Treatment for Claimant's work injury consisted of electrical nerve stimulation, muscle relaxants, opioids, steroid injections, exercise, and physical therapy. *Id.* at 11. Dr. Miller referred Claimant to a pain management specialist for his narcotic prescriptions but continued to treat Claimant every two or three months. *Id.* at 12.

Dr. Miller opined, within a reasonable degree of medical certainty, that Claimant had a chronic lumbar sprain, a post-traumatic herniated disc of his lumbar spine, and post-traumatic lumbar radiculopathy, all of which he attributed to the February 12, 2003 work injury. *Id.* at 15-16. Dr. Miller did not believe Claimant had recovered from that injury. *Id.* at 18.

### 3. The First WCJ's Decision

The First WCJ credited the testimony of Claimant that his pain continued and, without treatment and medication, his pain worsened. First WCJ Decision, 2/13/14, Finding of Fact (F.F.) Nos. 11-12. The First WCJ discredited the testimony of Dr. Manzione due to disparities between his deposition testimony and written reports. F.F. No. 12. As such, the First WCJ concluded Employer failed to meet its burden of proving Claimant had fully recovered from his work injury.[5] First WCJ Decision, 2/13/14, at 6. As to Claimant's penalty petition, the First WCJ found Claimant presented insufficient documentation to support his contention that Employer failed to pay his outstanding medical bills. *Id.*, F.F. No. 13. Accordingly, the First WCJ

---

[5] The First WCJ made no credibility determinations with regard to Dr. Miller's testimony.

denied both the termination and penalty petitions. First WCJ Decision, 2/13/14, at 7. Employer appealed to the Board, which affirmed. C.R., Item No. 26, at 36.

## B. Employer's Second Termination Petition

Employer's second termination petition, filed April 22, 2016, is the subject of this appeal. Employer once more alleged that Claimant had fully recovered from his work injury and was no longer in need of medical treatment. C.R., Item No. 2. Claimant denied the allegations and filed a second penalty petition in which he claimed Employer violated the Act by failing to pay medical bills related to his February 12, 2003 work injury. *Id.*, Item Nos. 4-5.

In support of its petition, Employer presented the deposition testimony of Dr. Manzione, who performed a second IME of Claimant on March 3, 2016. Claimant presented the deposition testimony of his treating physician, Dr. Miller. Claimant also testified by deposition on June 27, 2016.

## 1. Employer's Evidence

Dr. Manzione testified that Claimant related he continued to experience pain in his lower back, with numbness and tingling that extended to his extremities. N.T., 7/28/16, at 10. Claimant treated his pain with exercise and medication. *Id.* at 10-11. As of the date of the IME, Claimant was taking OxyContin, Oxycodone, Skelaxin, Gabapentin, and Lorazepam. *Id.* at 11. Claimant expressed that on some days his symptoms were worse than they had been in 2012 when Dr. Manzione performed the previous IME. *Id.* at 10.

Dr. Manzione found no significant change in Claimant's condition from what he observed at the February 21, 2012 IME. *Id.* at 21. Claimant exhibited a slow gait during the examination and he moved slowly when lying down and required assistance to rise from a prone position. *Id.* at 12. Claimant exhibited tenderness in

6

his mid- and lower lumbar spine, limited motion in flexion and extension, and expressed pain at the extremes of all planes of motion. *Id.* Claimant further complained of pain in his lower back during the straight leg raise test. *Id.*

Having reviewed Claimant's medical records, including X-rays and MRI scans of his lumbar spine, Dr. Manzione determined that Claimant suffered from degenerative disease of his lumbar spine and "various discogenic problems." *Id.* at 19. Dr. Manzione testified that Claimant's symptoms and physical findings "in a different context" could be interpreted as a lumbar sprain. *Id.* at 14. However, Dr. Manzione deemed it unlikely that the abnormalities he found related to a sprain that occurred 13 years earlier. *Id.* at 13-14. Rather, those findings were related to Claimant's disc injury which was responsible for his ongoing symptoms and need for treatment. *Id.* at 19-20.

Dr. Manzione opined within a reasonable degree of medical certainty that Claimant had recovered from his February 12, 2003, lumbar sprain. *Id.* at 19. Reaffirming his prior deposition testimony, Dr. Manzione reasoned that a lumbar sprain would not cause such prolonged symptoms, and Claimant would not require ongoing treatment for that injury. *Id.* at 19, 21.

2. Claimant's Evidence

Dr. Miller testified that he observed no changes in Claimant's back condition from the date of his previous deposition taken February 27, 2013. *Id.* N.T., 11/10/16, at 7. Dr. Miller continued to see Claimant approximately once a month to perform a physical examination and prescribe pain medication. *Id.* In his most recent note to Claimant's medical file, dated August 9, 2016, Dr. Miller observed that Claimant reported back pain with spasms on a daily basis. *Id.* at 10. His pain was rated an 8 out of 10. *Id.* Claimant's lumbar spine showed decreased range of

motion. *Id.* Dr. Miller opined that Claimant had not fully recovered from the February 12, 2003 work injury. *Id.* at 11. Dr. Miller acknowledged on cross-examination that the diagnosis of lumbar sprain did not appear in Claimant's file after March 7, 2003; however, Dr. Miller explained the lumbar sprain was not included because it was "common knowledge [Claimant had] that diagnosis." *Id.* at 14.

Claimant testified he has had no other accidents or suffered any trauma since February 12, 2003. N.T., 6/27/16, at 5-6. His symptoms are treated with OxyContin, OxyCodone, and Gabapentin, and exercise. *Id.* at 7. Claimant acknowledged he occasionally uses marijuana. *Id.* at 13. Claimant is the primary caretaker for his wife, who is bedridden, and he performs household chores such as cooking and laundry. *Id.* at 14-15. Claimant's adult son lives with him and takes responsibility for the grocery shopping. *Id.* at 18. As far as his pain levels, Claimant testified he can sit or stand for about one hour on a good day. *Id.* On a bad day, he can sit or stand for about 10 minutes. *Id.* Claimant is able to lift approximately five pounds. *Id.* He uses a back brace on occasion, but did not wear it for the deposition. *Id.* at 18-19.

### 3. The Second WCJ's Decision

The Second WCJ found credible Claimant's testimony that he had pain and limitations from his low back condition. Second WCJ Decision, 7/24/17, F.F. No. 12. However, to the extent Claimant's pain was still caused by the February 12, 2003 work injury and not a degenerative condition, the Second WCJ rejected his testimony in favor of Dr. Manzione's. *Id.* The Second WCJ accepted as credible Dr. Manzione's testimony that Claimant was fully recovered from his work injury and Claimant's ongoing pain and limitations were related to a non-work related

8

degenerative condition. F.F. No. 13. Dr. Miller's opinion that Claimant's pain was caused by the work injury was rejected in favor of Dr. Manzione's more persuasive opinion that a lumbar sprain would not last for 13 years. F.F. No. 14. The Second WCJ opined that Employer was not required to show a change in Claimant's medical condition.[6] F.F. No. 15. Nevertheless, the Second WCJ found that the worsening of Claimant's non-work related degenerative condition constituted a change in physical condition. *Id.*

The Second WCJ determined that Claimant had recovered from his February 12, 2003 work injury and any ongoing problems in his lumbar spine were due to an unrelated degenerative condition. *Id.*, F.F. No. 16. The Second WCJ further found that Claimant failed to show Employer violated the Act by failing to pay for the medical bills in question. *Id.*, F.F. No. 17. Accordingly, Employer's termination petition was granted and Claimant's penalty petition was denied. Second WCJ Decision, 7/24/17, at 8.

Claimant appealed to the Board, which affirmed the Second WCJ's denial of Claimant's penalty petition. Board Decision, 8/7/18, at 6. However, the Board reversed that part of the Second WCJ's order granting Employer's termination petition. *Id.* The Board reasoned that, as Employer's prior termination petition was denied, Employer bore the burden of proving a change in Claimant's condition since that adjudication. *Id.* at 4. As Dr. Manzione testified that Claimant's condition had not changed since he examined Claimant on February 22, 2012, Employer failed to

---

[6] The Second WCJ cited *Lewis v. Workers' Compensation Appeal Board (Giles & Ransome, Inc.)*, 919 A.2d 922, 929 (Pa. 2007), in which the Supreme Court concluded that, in order to modify or terminate a claimant's workers' compensation benefits based on a decrease in physical disability, an employer must show a change in physical condition since the preceding disability adjudication.

9

meet its burden. *Id.* at 5. The Second WCJ's determination that Claimant's non-work related degenerative condition had worsened was irrelevant, as the issue was whether Claimant's work-related condition had changed. *Id.*

This appeal followed.[7]

## Issues

Employer raises multiple overlapping issues on appeal. Specifically, Employer argues competent medical evidence supports a finding that Claimant has fully recovered from his work injury. Employer asserts that a change in Claimant's physical condition was demonstrated through testimony that his non-work related degenerative back condition had worsened. Alternatively, Employer asserts it was not required to establish a change in Claimant's condition.

## Discussion

As resolution of the issues raised by Employer rests on our application of the principles set forth in *Lewis*, we begin with a review of that decision and its progeny.

The pertinent facts of *Lewis* are as follows. Lewis was employed as a truck driver. 919 A.2d at 923. He suffered a work injury when the forklift he was operating fell off the back of a truck. *Id.* at 923-24. Lewis' employer recognized his injury and paid benefits for approximately two years by means of an NCP. *Id.* at 924. Beginning in 1990, and over the course of 12 years, Lewis' employer filed four termination petitions, the first three of which were denied. *Id.* The fourth petition was filed three days after the Board affirmed the WCJ's denial of the third petition. *Id.* The employer's fourth termination petition was granted by the WCJ,

---

[7] Our review of the Board's Order is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated, or whether an error of law was committed. *Walter v. Workers' Comp. Appeal Bd. (Evangelical Cmty. Hosp.)*, 128 A.3d 367, 371 n.5 (Pa. Cmwlth. 2015).

10

who found the employer's expert witness more credible than Lewis' and determined that Lewis had fully recovered from his work-related injuries. *Id.* The Board affirmed the WCJ. *Id.* This Court affirmed the Board. *Id.*

The Supreme Court reversed on the basis the employer's expert failed to demonstrate Lewis' physical condition had changed since the last adjudication. *Id.* at 929. With regard to a termination of benefits on the basis that a claimant's disability has reduced or ceased due to the claimant's physical improvement, the Court noted that an employer's petition must be based on medical proof of a change in the claimant's physical condition. 919 A.2d at 926. By natural extension, where prior petitions to terminate have been filed, "the employer must demonstrate a change in physical condition since the last disability determination." *Id.* Without such a requirement, a disgruntled party could repeatedly file petitions based on the same evidence in the hopes of finding a WCJ who finally decides in its favor. *Id.*

In *Prebish v. Workers' Compensation Appeal Board (DPW/Western Church)*, 954 A.2d 677 (Pa. Cmwlth. 2008), the issue before this Court was whether, in light of the decision in *Lewis*, the employer met its burden of showing a change in the claimant's physical condition from the time of the last disability determination and was consequently entitled to a termination of the claimant's benefits. This Court noted that the WCJ credited the employer's expert medical testimony that the claimant had fully recovered from her work injury. *Id.* at 683. However, it was not clear whether that testimony "satisfie[d] the standard set forth in *Lewis*, i.e., whether [the claimant's] physical condition changed from the time of the [f]irst WCJ's adjudication." *Id.* The Court concluded such a factual finding was necessary in the wake of *Lewis. Id.* at 684.

11

In *Delaware County v. Workers' Compensation Appeal Board (Browne)*, 964 A.2d 29, 36 (Pa. Cmwlth. 2008), this Court made it explicitly clear that a mere pronouncement that a claimant had fully recovered from his or her work injury was not sufficient to satisfy the requirements of *Lewis*. Rather, "there must be a factual finding that a claimant's physical condition changed from the time of the last disability adjudication." *Id*.

In light of these decisions, we turn to the issues raised by Employer. First, Employer argues the record contains competent medical evidence which supports the Second WCJ's finding that Claimant had fully recovered from his February 12, 2003 work injury, as the Second WCJ credited Dr. Manzione's opinion of full recovery and discredited the testimonies of Claimant and Dr. Miller that pain caused by the February 12, 2003 work injury persisted 13 years later. Employer contends that a finding of non-recovery by the First WCJ followed by a finding of full recovery by the Second WCJ represents a finding that Claimant's condition had changed. Alternatively, Employer asserts the requisite finding of a change in condition was met when the WCJ found Claimant's non-work related degenerative condition had worsened, and the Board erred in concluding otherwise. Employer cites no authority for the proposition that any change of physical condition, even one unrelated to the work injury, satisfies the standard set forth in *Lewis*.

Employer is correct that the Second WCJ's finding of full recovery is supported by the evidence in the record. The Second WCJ credited the testimony of Dr. Manzione, who testified that Claimant's lumbar sprain would not have persisted more than a decade after the injury was sustained. The testimonies of Dr. Miller and Claimant that Claimant's ongoing pain was caused by the February 12, 2003 lumbar sprain were rejected in light of Dr. Manzione's more persuasive opinion. Unless

made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal. *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006).

A finding of full recovery by the Second WCJ is not dispositive of the issue, however, as our above discussion of *Lewis* and the decisions that followed make clear. A simple finding of full recovery by the Second WCJ was not sufficient. *Delaware Cty*. The Second WCJ was required to make a factual finding that Claimant's physical condition changed from the time of the last disability adjudication.

When seeking to terminate benefits on the basis that a claimant's medical condition has improved, "the employer bears the burden of demonstrating *actual physical improvement*." *Lewis*, 919 A.2d at 926 (emphasis added). Only in the complete absence of reason or logic could this Court conclude Employer has satisfied that burden through its demonstration that Claimant's physical condition has deteriorated. Further, the requirement in *Lewis* that an employer establish a change in condition presumes consideration of the accepted work injury, and not a separate and unrelated ailment or condition from which the claimant may suffer.

Presently, the Second WCJ found that Claimant had fully recovered from his work-related injury. However, beyond finding that Claimant's *non-work related condition had worsened*, the Second WCJ made no finding that Claimant's overall physical condition had changed. As such, we cannot agree with Employer that his decision comports with the requirements set forth in *Lewis*, and the Board did not err in reversing the Second WCJ on that basis.

Next, Employer argues the Board improperly considered Dr. Manzione's testimony on cross-examination that Claimant's condition had not changed

significantly from the date of the first IME.  Employer suggests that Dr. Manzione's testimony, when taken as a whole, supports the WCJ's finding that Claimant had fully recovered from his February 12, 2003 lumbar sprain.

Having reviewed the deposition testimony of Dr. Manzione from both the first and second proceedings, we discern no error on the part of the Board and agree Employer failed to present evidence establishing a change in Claimant's physical condition from the date of the first disability determination.

In both depositions, Dr. Manzione testified that Claimant exhibited a slow gait and he moved slowly when lying down.  Claimant was able to rise unassisted from a prone position at the first IME; however, he required help to sit up at the second IME.  Both examinations indicated that Claimant exhibited tenderness in his lumbar spine, that Claimant's range of motion was limited, and that Claimant experienced lower back pain at the extremes of all planes of motion.  The straight leg test was positive for lower back pain at both IMEs.  Dr. Manzione's testimony on cross-examination that he found no significant change in Claimant's condition from what he observed at the February 21, 2012 IME is entirely consistent with his testimony on direct examination.

Finally, Employer argues that *Lewis* does not apply in the present matter as this matter does not involve serial termination petitions.  Employer further attempts to distance itself from the application of *Lewis* by suggesting that the first termination petition was not adjudicated on the merits.[8]

---

[8] Employer cites *Paul v. Workers' Compensation Appeal Board (Integrated Health Servs.)*, 950 A.2d 1101 (Pa. Cmwlth. 2008), in which this Court determined that the requirements of *Lewis* did not apply because the parties had not previously litigated this matter.  *Paul* is inapposite to the present matter, as only one termination petition was filed in *Paul*, and a single adjudication took place.

14

Employer's argument that *Lewis* is inapplicable lacks merit. The *Lewis* decision does not implicitly or explicitly require the filing of serial petitions prior to the application of the standard set forth therein. Neither *Delaware County* nor *Prebish* involved the filing of serial termination petitions, yet this Court applied the principal holding in *Lewis* to those adjudications.[9] We likewise disagree with Employer's characterization of the first adjudication. The First WCJ explicitly found Dr. Manzione not credible, as the opinions rendered in his medical reports and during his testimony were inconsistent. While the First WCJ made no finding of credibility in regards to Dr. Miller, he made credibility determinations with regard to Claimant and concluded that Employer "failed to meet its burden to prove that Claimant has fully recovered." First WCJ Decision, 2/13/14, at 6.

**Conclusion**

As the WCJ failed to make a factual finding that Claimant's physical condition changed from the time of the last disability adjudication in keeping with our Supreme Court's holding in *Lewis*, we discern no error in the Board's decision to reverse that part of the WCJ's order which granted Employer's termination petition. Accordingly, the order of the Board is hereby affirmed.

_____
ELLEN CEISLER, Judge

---

[9] *See also Folmer v. Workers' Comp. Appeal Bd. (Swift Transp.)*, 958 A.2d 1137 (Pa. Cmwlth. 2008) (to prevail in a second termination proceeding, employer was required to present medical evidence to show that the claimant's condition changed from the prior termination proceeding).

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Township of Lower Makefield and     :
Delaware Valley Workers'            :
Compensation Trust,                :
             Petitioners     :
                                  :
       v.                     :   No. 1197 C.D. 2018
                                  :
Workers' Compensation Appeal     :
Board (Stewart),                 :
             Respondent     :

# **O R D E R**

AND NOW, this 13th day of May, 2019, the August 7, 2018 order of Workers' Compensation Appeal Board is hereby affirmed.

_____
ELLEN CEISLER, Judge