IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Luis Navarez,                              :
                    Petitioner             :
                                           :
         v.                                :   No. 1080 C.D. 2018
                                           :   SUBMITTED:  August 2, 2019
Workers' Compensation Appeal               :
Board (Dan's Lawn Care Inc.,               :
Uninsured Employers Guaranty               :
Fund, and State Workers' Insurance         :
Fund),                                     :
                    Respondents            :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                           FILED:  November 21, 2019


Luis Navarez (Claimant) petitions this Court for review of the August 1, 2018 order of the Workers' Compensation Appeal Board (Board), which affirmed a decision of the workers' compensation judge (WCJ) denying Claimant benefits under the Workers' Compensation Act (Act).[1]  The issue before this Court is whether, at the time of his injury, Claimant was a casual employee of Dan's Lawn Care Inc. (Employer) and not working within the regular course of its business, thus

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

rendering him ineligible for workers' compensation benefits under Section 104 of the Act.[2] After review, we affirm.

## Background

Claimant worked as a laborer for Employer's lawn care business. Notes of Testimony (N.T.), 5/7/12, at 20. Claimant's duties consisted of driving a truck, cutting grass, raking leaves, and spreading mulch. *Id.* at 6, 24. Periodically, Claimant would clean Employer's shop and maintain the lawn care equipment stored there. *Id.* at 8. Employer's lawn care business operated seasonally, from April through December. *Id.* at 7. Claimant received his final paycheck from Employer on December 9, 2011, following the conclusion of the 2011 season. N.T., 6/29/12, at 13.

In late December 2011, Employer's owner, Daniel Waltson, called Claimant and asked him to work for a few days on a project converting the second-floor space above Employer's shop into an apartment. *Id.* at 76. On December 30, 2011, while installing wood siding on the exterior of the building, Claimant fell from a ladder, injuring his left femur and elbow. N.T., 5/7/12, at 13, 17-18.

Claimant filed a claim petition against Employer on January 17, 2012, asserting he was fully disabled by the December 30, 2011 accident. Certified Record (C.R.), Item No. 16. Employer filed an answer denying liability for Claimant's injuries as Employer's seasonal operations ceased on December 5, 2011, and Claimant was laid off on that date. Reproduced Record (R.R.) at 6a. Consequently, Claimant was not working for Employer on December 30, 2011. *Id.* at 5a.

---

[2] Section 104 of the Act defines the term employee and provides that "[a]ll natural persons who perform services for another for a valuable consideration" are employees, with the relevant exception of those "whose employment is casual in character and not in the regular course of the business of the employer." 77 P.S. § 22.

Thereafter, upon notice that Employer failed to maintain workers' compensation insurance, Claimant filed a claim petition seeking workers' compensation benefits from the Uninsured Employers Guaranty Fund (UEGF).[3] C.R., Item No. 2. The UEGF filed an answer denying liability for Claimant's injuries and asserting that Claimant was not employed by Employer on December 30, 2011. *Id.*, Item No. 4.

Hearings were held before the WCJ over the course of several months. Claimant testified on his own behalf. Employer presented the testimony of Waltson and Ruth Waltson, who is Waltson's mother and Employer's payroll manager.[4]

## 1. **Claimant's Evidence**

Claimant testified that his work for Employer's lawn care business generally began each April and ended each December. N.T., 5/7/12, at 7. In addition to his regular duties, Claimant worked as a crew leader supervising two employees. *Id.* at 20-21. Claimant drove Employer's truck and maintained the daily record of lawns mowed. *Id.* at 21. Employer provided Claimant with a business credit card to purchase fuel for the truck. *Id.* Claimant received his final paycheck for the 2011 season on December 9, 2011. *Id.* He returned Employer's credit card that same day. *Id.* at 24.

At times, Waltson called Claimant in the off season to offer him work. *Id.* at 7. During one such period, Claimant insulated and painted the walls of the second-floor space above Employer's shop. *Id.* at 11. In late December 2011, Waltson

---

[3] Section 1602 of the Act, added by the Act of November 9, 2006, P.L. 1362, 77 P.S. § 2702, establishes the UEGF as a special fund to be used for the purpose of paying a claimant workers' compensation benefits where the employer otherwise liable for those benefits has failed to obtain insurance for workers' compensation liability.

[4] As the existence and extent of Claimant's injuries are not in dispute, we do not summarize the medical evidence herein, or any testimony not relevant to resolving the sole issue presented to this Court.

3

called Claimant and asked whether he wanted to work for "some days." *Id.* at 9. This work commenced on December 27 or 28, and Claimant anticipated being paid in cash. *Id.* at 9, 69. Claimant testified he worked in the second-floor space installing door locks and wood siding, caulking a vent, and painting the floor. *Id.* at 10-11, 15. Claimant asserted he performed this work at Waltson's direction. *Id.* at 33-35. On December 30, 2011, Claimant injured his left leg and elbow after falling from a ladder while installing wooden siding on the building's exterior. *Id.* at 17. When asked on cross-examination whether Waltson or Employer hired him for the off-season work, Claimant responded that "I always work for [Waltson]. I don't know." *Id.* at 70.

### 2. **Employer's Evidence**

Waltson testified he is the sole owner of Employer, and the owner of the building in which Employer's shop is located. N.T., 6/29/12, at 69, 112. Employer's shop is on the first floor. *Id.* at 69. The second floor has been renovated into an apartment. *Id.* Employer pays rent to Waltson for its use of the first floor space. *Id.*

Claimant was initially hired in 2003 to cut grass. *Id.* at 70. Waltson described Claimant as a "good guy to work with, a hard worker." *Id.* at 70. After his first year with Employer, Claimant was promoted to crew leader. *Id.* The duties for that position included driving Employer's truck, supervising the work of the crew, maintaining Employer's lawn care equipment, and cleaning the shop. *Id.* at 113-14. Employer's seasonal employees are all subject to layoff in the winter. *Id.* at 114-15.

A few weeks after Employer ended its seasonal operations in December 2011, Claimant asked Waltson if any customers had called asking for "clean-ups." *Id.* at 75. Waltson said no and advised Claimant the business was shut down for the season. *Id.* Later that evening, Waltson called Claimant and offered him a job

4

painting the floor of the space above Employer's shop. *Id.* at 76-77. Waltson testified Claimant was hired solely to paint, not to install locks or work on the exterior of the building. *Id.* at 77. Waltson hired Eric,[5] another of Employer's seasonal employees, to assist with the painting. *Id.* at 80. Waltson anticipated the work would only take a day or two. *Id.* at 78.

Waltson hired a contractor, Ronald Collins, to renovate the exterior of the building and convert the second floor space into an apartment. *Id.* at 71. Collins hired his own crew to perform the renovations. *Id.* at 72. On December 29, 2011, Waltson discovered Claimant on a ladder installing wood siding to the building's exterior. *Id.* at 83-84. Waltson asked Claimant to stop, as he "didn't know what he was doing," and Claimant left the property. *Id.* at 84.

The next morning, Collins called Waltson to report Claimant was back on the ladder installing wooden siding. *Id.* at 86. Waltson drove to the property and directed Claimant to get off the ladder, put it away, and go home. *Id.* at 88. After Claimant began to comply, Waltson left to discuss the renovation project with Collins. *Id.* Less than a minute later, Eric notified Waltson that Claimant had fallen from the ladder. *Id.* at 89. Claimant was taken to the hospital by ambulance. *Id.* at 90.

Waltson notified his homeowner's insurance carrier of the accident. *Id.* at 91. He advised Claimant's treatment provider that Claimant was injured working for Waltson personally, not Employer. *Id.* Waltson had the impression Claimant did not realize who he was working for at the time of the accident. *Id.* at 93.

Ruth Waltson testified that she helps Employer with filing, payroll, and deposits. *Id.* at 10. Employer has not carried workers' compensation insurance since

---

[5] No surname is given for this employee.

2003. *Id.* at 20. Claimant received his last paycheck from Employer on December 9, 2011. *Id.* at 13. At that time, Ms. Waltson advised Claimant to apply for unemployment. *Id.* Ms. Waltson testified that Waltson, not Employer, paid for the renovations to the second-floor apartment. *Id.* at 15.

### 3. **First WCJ Decision**

The WCJ addressed both claim petitions in a decision circulated on October 29, 2014 (First WCJ Decision). The WCJ accepted the testimony of Claimant's treating physician that Claimant was totally disabled by the injuries he sustained on December 30, 2011, until March 25, 2013, the date Claimant was released to work in a light duty capacity. First WCJ Decision, Finding of Fact (F.F.) No. 2. However, the WCJ found that Employer's lawn care business operated on a seasonal basis from April through late November or early December. *Id.*, F.F. No. 5. Claimant received his final paycheck from Employer on December 9, 2011, at which point Claimant turned in Employer's credit card. *Id.* Claimant was instructed at that time to file for unemployment. *Id.*

The record thus demonstrated that Claimant experienced a complete break in his employment relationship that would last until the following spring. First WCJ Decision, F.F. No. 6. Claimant's subsequent employment by Waltson was deemed casual in character as it was not regular or continuous and was expected to last no more than a few days. *Id.*, F.F. No. 7. Furthermore, none of the work performed by Claimant during the days leading up to his injury on December 30, 2011 – painting, installing door locks, caulking, and installing wood trim – were associated with Employer's regular business, which involved cutting grass, raking leaves, driving a truck, maintaining Employer's equipment, and cleaning Employer's shop. *Id.*, F.F. No. 6. As Claimant's employment was casual in character and not in the regular

6

course of Employer's business, relief was precluded by Section 104 of the Act. *Id.* Accordingly, the WCJ denied both claim petitions. First WCJ Decision at 7.

Claimant appealed to the Board. In an opinion dated May 5, 2015, the Board noted that the WCJ found Claimant credible as to his post-season employment. Bd. Op. at 7. However, the WCJ made no determinations as to whether Employer was an entity distinct from Waltson such that work performed on Waltson's behalf should be attributed to Employer. *Id.* at 9. As a result, the Board remanded the matter to the WCJ for further findings and conclusions as to the individual liability of Waltson. *Id.*

### 4. Second WCJ Decision

The WCJ circulated a new decision on January 1, 2017 (Second WCJ Decision) in which he adopted the findings of fact made in his October 29, 2014 decision. The WCJ reiterated his finding that Claimant was credible as to the post-season work he performed in late December 2011 and, while both parties were generally deemed credible, Claimant's testimony was accepted over any contrary evidence presented by Employer. Second WCJ Decision, F.F. Nos. 5-6. As to Waltson's individual liability, the WCJ found a significant nexus between Waltson and Employer, given Waltson's status as the sole owner of Employer and the building in which Employer's shop was located. *Id.*, F.F. No. 7-8. Waltson's decision to hire another of Employer's seasonal workers for the apartment renovations demonstrated how Waltson utilized the services of Employer's employees to advance his personal interests. *Id.*, F.F. No. 8. Waltson's testimony that Claimant likely did not know "who he was working for at that time" further evidenced Waltson's failure to distinguish between services performed for him personally and those performed on behalf of Employer. *Id.*

These findings notwithstanding, the WCJ determined that Claimant's employment on December 30, 2011 was casual in nature. Second WCJ Decision, F.F. No. 9. Even assuming Claimant worked for Employer on December 30, 2011, his duties in renovating the second floor apartment were, at best, of incidental benefit to Employer. *Id.* The work was not undertaken as regular or continuous employment and was limited to a few days' duration. *Id.* As such, Claimant was ineligible for benefits under Section 104 of the Act. Second WCJ Decision at 7.

Claimant appealed to the Board, which affirmed. This appeal[6] followed.

## Issue

The issue before this Court is whether Claimant's employment was casual in character and not in the regular course of Employer's business such that Claimant is ineligible for workers' compensation benefits.

Claimant argues the work he performed in late December 2011 constituted maintenance to Employer's shop and a continuation of Claimant's seasonal work, which had been interrupted by a "short lay off." Claimant's Br. at 11. As such, Claimant's employment cannot be deemed casual under Section 104 of the Act. Employment must be both casual *and* not within the regular course of Employer's business before benefits are precluded under the relevant provisions of Section 104 of the Act. As Employer has not satisfied the first prong of the two-part test in Section 104, Claimant argues the WCJ erred in denying him benefits.

---

[6] Our review of an order of the Board is limited to a determination of whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated, or whether an error of law was committed. *Walter v. Workers' Comp. Appeal Bd. (Evangelical Cmty. Hosp.)*, 128 A.3d 367, 371 n.5 (Pa. Cmwlth. 2015). Whether Claimant's employment was casual in character and not in the regular course of Employer's business is a question of law and our review is plenary. *Brookhaven Baptist Church v. Workers' Comp. Appeal Bd. (Halvorson)*, 912 A.2d 770, 777 (Pa. 2006).

8

The UEGF argues the WCJ correctly determined Claimant's employment was casual in character and not in the regular course of Employer's business.[7] Claimant was performing short-term non-lawn care work, several weeks after being laid off from his seasonal work, on an apartment owned by Waltson and unrelated to Employer's business. This post-season work was infrequent, irregular and limited in nature. Consequently, the WCJ correctly concluded Claimant was ineligible for workers' compensation benefits under Section 104 of the Act.

### Analysis

Section 104 of the Act excludes from the definition of employees eligible for workers' compensation benefits those "persons whose employment is casual in character and not in the regular course of the business of employer." 77 P.S. § 22. "Claimants are entitled to compensation unless they are found to be both casual employees *and* acting not in the regular course of the employer's business." *Carpenters' Joint Apprenticeship Comm. v. Workmen's Comp. Appeal Bd. (Wisniewski)*, 654 A.2d 656, 659 (Pa. Cmwlth. 1995) (emphasis in original).

While the Act provides no definition for casual employment, our Supreme Court defined the term in *Cochrane v. William Penn Hotel*, 16 A.2d 43 (Pa. 1940). Generally, employment is considered casual if an individual is employed "only occasionally, at comparatively long and irregular intervals, for limited and temporary purposes, the hiring in each instance being a matter of special engagement." *Id.* at 44. Employment is not considered casual "if the need for the work recurs with a fair degree of frequency and regularity," even if the work performed is not continuous, but only for the performance of occasional jobs. *Id.* at

---

[7] Pursuant to an order of this Court dated May 3, 2019, Employer was precluded from filing a brief in this matter as the initial brief failed to comply with the Pennsylvania Rules of Appellate Procedure and Employer failed to timely file an amended brief.

44-45. Furthermore, even where only a single or special job is involved, such employment is not casual if the work is not of an emergency or incidental nature, but rather represents a planned project, and the tenure of the service necessary to complete the project is of fairly long duration. *Id.* at 45. Whether the work injury takes place shortly after the work commences is irrelevant. *Id.*

Having reviewed the record and relevant case law, we discern no error in the WCJ's application of Section 104 in this matter.

First, we cannot agree with Claimant that his post-season employment renovating the second-floor apartment constituted a continuation of his seasonal duties. There is no evidence to suggest Claimant ever painted or otherwise renovated the second-floor apartment as part of Employer's seasonal business, which routinely commenced in April and ended in late November or early December. Rather, the record indicates Claimant's seasonal employment with Employer ended on December 5, 2011. Claimant received his final paycheck on December 9, 2011, and was instructed to file for unemployment compensation. A few weeks later, Claimant was hired to paint the space *above* Employer's shop, not the shop itself, which is solely located on the first floor of the building. Although Employer rents the shop from Waltson, Claimant has not established any interest of Employer in the second-floor space. Indeed, Claimant has not demonstrated that the first- and second-floor spaces share any connection beyond the fact that Waltson owns the building in which they are located.

Moreover, whether Claimant worked for Employer or Waltson personally is of little moment under the facts of this case. The issue before this Court is whether the employment *itself* was casual in character and not in the regular course of the business of the employer. Claimant has not suggested that either Waltson or

10

Employer is in the business of building renovation. Employer's lawn care business involves just that – cutting grass, raking leaves, spreading mulch, maintaining the equipment necessary to perform those duties, and cleaning the shop in which the equipment is stored. As Waltson is the owner of Employer, in the absence of evidence to the contrary, Waltson's business encompasses that of Employer. Employer's business did not regularly renovate properties through the installation of door locks and siding, or painting walls and floors, and the record does not suggest Waltson himself engaged in such work separately from Employer. Indeed, Waltson hired an outside contractor – Collins – to perform most of the renovations to the building. Based on the record before us, we are unable to conclude that Claimant's employment renovating the second-floor apartment was in the regular course of either Employer's or Waltson's business.

Claimant's employment can only be described as casual. Claimant was hired to paint the floor of the second-floor apartment for a few days at most. We recognize that, in the 2010 off season, Claimant painted the walls of the same apartment. However, there are no facts in the record which suggest that, upon completion of the floor painting, the need for such work would recur with any frequency or regularity or that Claimant had a fair expectation that the employment would continue past the one or two days offered by Waltson. Rather, Claimant's engagement by Waltson was for limited and temporary purposes, and a matter of special engagement. *Cochrane.*

## Conclusion

The WCJ correctly determined that Claimant's employment was casual in character and not in the regular course of Employer's business. Accordingly,

11

benefits were properly denied pursuant to Section 104 of the Act and we affirm the Board.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Luis Navarez, : 
                Petitioner : 
              : 
      v. : No. 1080 C.D. 2018
              : 
Workers' Compensation Appeal : 
Board (Dan's Lawn Care Inc., : 
Uninsured Employers Guaranty : 
Fund, and State Workers' Insurance : 
Fund), : 
                Respondents : 

# **O R D E R**

AND NOW, this 21st day of November, 2019, the August 1, 2018 order of Workers' Compensation Appeal Board is hereby AFFIRMED.

 

_____
ELLEN CEISLER, Judge